IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:17CR243 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM HOLMES, and | ) | UNITED STATES' TRIAL BRIEF |
| DEMON CARTER, | ) | |
| | ) | |
| Defendants. | ) | |

The United States of America, by and through its counsel, Justin E. Herdman, United

States Attorney, and Megan R. Miller and Carol M. Skutnik, Assistant United States Attorneys,

respectfully submits the following trial brief.

I.     **CONTROLLING LAW**

Count 1 of the Indictment charges Defendants William Holmes and Demon Carter with

conspiring to interfere with commerce by means of robbery.  The relevant statute on this offense

is Title 18, United States Code, Section 1951, which provides:

> Whoever in any way or degree obstructs, delays, or affects
> commerce or the movement of any article or commodity in
> commerce, by robbery or extortion or attempts or conspires so to do,
> or commits or threatens physical violence to any person or property
> in furtherance of a plan or purpose to do anything in violation of this
> section . . .

shall be guilty of an offense against the United States.  18 U.S.C.§ 1951(a).  To sustain its burden

of proof for this crime, the United States must prove all of the following elements beyond a

reasonable doubt:

> (1)     That two or more persons conspired, or agreed, to commit the crime of
>         Interference with Commerce by Means of Robbery; and
>
> (2)     That the defendant knowingly and voluntarily joined the conspiracy.

Sixth Circuit Pattern Criminal Jury Instructions, 2017 Edition, Section 3.01A (modified to reflect

the fact that the Hobbs Act, 18 U.S.C. § 1952, does not require an overt act).

Counts 2 and 3 charge Holmes and Carter with aiding and abetting the interference with

commerce by means of robbery.  Count 5 charges Holmes with an additional count of aiding and

abetting the interference with commerce by means of robbery.  The relevant statute on these

offenses is likewise Title 18, United States Code, Section 1951, which is quoted above.  To

sustain its burden of proof for this crime, the United States must prove all of the following

elements beyond a reasonable doubt:

> (1)     That the defendant (or his accomplice) unlawfully took money from
>         someone, against that person's will;
>
> (2)     That the defendant (or his accomplice) did so by actual or threatened force,
>         or violence, or fear of injury, immediately or in the future, to the person or
>         the person of anyone in his company at the time of the taking;
>
> (3)     That the defendant did so knowingly; and
>
> (4)     That as a result, interstate commerce was affected in any way or degree.

Sixth Circuit Pattern Criminal Jury Instructions, 2017 Edition, Section 17.03.  To prove liability

as an aider and abettor for this crime, the United States must prove all of the following elements

beyond a reasonable doubt:

> 1:  That the crime of Interference with Commerce by Means of
>     Robbery was committed;

2:  That the defendant helped to commit the crime or encouraged someone else to commit the crime of Interference with Commerce by Means of Robbery; and

3:  That the defendant intended to help commit or encourage the crime of Interference with Commerce by Means of Robbery.

Sixth Circuit Pattern Criminal Jury Instructions, 2017 Edition, Section 4.01.

Counts 4 and 6 charge Defendant Holmes with brandishing, carrying, and using a firearm during and in relation to a crime of violence.  Count 6 also alleges that Holmes aided and abetted the brandishing, carrying, and use of a firearm during and in relation to a crime of violence.  The relevant statute on this offense is Title 18, United States Code, Section 924(c)(1)(A).  Section 924(c)(1)(A) provides, in relevant part:

Any person who, during and in relation to any crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm . . .

shall be guilty of an offense against the United States.  18 U.S.C.§ 924(c)(1)(A).

To sustain its burden of proof for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

1:  That the defendant (or co-conspirator) committed Hobbs Act Robbery as charged in Count 3 and/or 5, *i.e.*, a crime of violence which may be prosecuted in a court of the United States;

2:  That the defendant (or co-conspirator) knowingly brandished, used, or carried a firearm; and

3:  That the brandishing, carrying, or using of the firearm was during and in relation to the crime of as charged in Count 3 and/or Count 5.

To prove liability as an aider and abettor for this crime, the United States must prove all of the following elements beyond a reasonable doubt:

1:  That the crime of Brandishing, Carrying, or Using a Firearm During and In Relation to a Crime of Violence was committed;

> 2: That the defendant helped to commit the crime or encouraged someone else to commit the crime of Brandishing, Carrying, or Using a Firearm During and In Relation to a Crime of Violence; and
>
> 3: That the defendant intended to help commit or encourage the crime of Brandishing, Carrying, or Using a Firearm During and In Relation to a Crime of Violence.

*See* Sixth Circuit Pattern Criminal Jury Instructions, 2017 Edition, Sections 2.02, 4.01, 12.02, and 12.04 (modified).

The defendant aided and abetted the crime of Brandishing, Carrying, or Using a Firearm During and In Relation to a Crime of Violence if he had advance knowledge that an accomplice would brandish, use or carry a firearm during the commission of a crime of violence. Advance knowledge means knowledge at a time when the defendant can attempt to alter the plan or withdraw from the enterprise. Knowledge of the firearm may, but does not have to, exist before the underlying crime is begun. It is sufficient if the defendant gained the knowledge in the midst of the underlying crime, as long as the defendant chose to continue to participate in the crime and had a realistic opportunity to withdraw. *See Rosemond v. United States*, 134 S. Ct. 1240, 1243 (2014) (holding "that the Government makes its case by proving that the defendant actively participated in the underlying drug trafficking or violent crime with advance knowledge that a confederate would use or carrying a gun during the crime's commission").

## II.    **STATEMENT OF FACTS**

On May 14, 2016, Defendants Carter, Holmes and another person robbed the Dollar Tree store located at 12900 Miles Road in Cleveland, Ohio. The unknown robber forced his way into the store at gunpoint and forced victim employee A.S. to the office at gunpoint. Defendants Holmes and Carter, who were outside of the store when it was robbed, aided and abetted the unknown robber.

On June 4, 2016, Defendants Carter and Holmes again robbed the Dollar Tree store on Miles Road. Victim employees J.P. and E.E. were outside closing the store shutters when Defendant Holmes approached. Holmes had a sweatshirt drawn around his face to conceal his identity and placed a gun to the back of J.P.'s head. Holmes forced the two employees back into the store and led them to the office at gunpoint. Holmes then forced E.E. to open the safe and stole the cash inside. Defendant Carter was outside of the store when it was robbed and aided and abetted Holmes.

On June 19, 2016, Defendant Holmes and two others robbed the Dollar Tree store located at 2892 E. 116th in Cleveland, Ohio, at gunpoint. All three men entered the store with semi-automatic weapons and brandished and pointed them at two victim employees and a store customer. Defendant Holmes approached a customer, forced him to the ground at gunpoint and took money from him. Holmes then went back to the entrance door and served as a lookout. Another robber approached victim employee A.M., pointed a gun at his face, and forced A.M. to the other side of the store. The third robber approached victim employee D.R. at gunpoint, following him around the store and forcing him to open two cash registers. After stealing the money from both cash registers and the customer, the three men left in a getaway car driven by a fourth accomplice.

## III.   **ANTICIPATED EVIDENTIARY ISSUES**

### A.   911 CALLS

The United States intends to introduce the audio recording of a 911 call from victim employee A.S. on May 14, 2016, describing the robbery of the Dollar Tree store on Miles Road minutes after it occurred. It also intends to introduce similar recordings of 911 calls on June 4, 2016. The 911 calls set the stage for why the police arrived at the Dollar Tree store on the dates

in question, and is highly probative of the date, time and nature of the robberies.  It is anticipated that defense counsel may object to the 911 call as prejudicial to the Defendant under Federal Rule of Evidence 403.

Rule 403 is clear: evidence that has probative value relating to the case must be included unless "its probative value is *substantially* outweighed by the danger of *unfair* prejudice." Fed. R. Evid. 403 (emphasis added).  Unfair prejudice does not turn on whether it makes it more difficult for a party to prove its case or raise a defense.  *See United States v. Guthrie*, 557 F.3d 243, 250 (6th Cir. 2009) ("Within the context of Rule 403, unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence; rather, it refers to evidence which tends to suggest [a] decision on an improper basis.") (internal citation and quotation omitted).  Otherwise, all evidence would be unfairly prejudicial.  On the contrary, the Supreme Court has held that "[t]he term 'unfair prejudice' [. . .] speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged," such as on the basis of emotion. *Old Chief v. United States*, 519 U.S. 172, 180 (1997). "Because all probative evidence is to some extent prejudicial, [courts have] consistently emphasized that Rule 403 balancing turns on whether the prejudice is *unfair*."  *United States v. Eads*, 729 F.3d 769, 777 (7th Cir. 2013) (citation omitted) (emphasis in original).

The Sixth Circuit has routinely upheld the district court's decision to admit 911 calls as probative evidence of the offense charged.  *See, e.g., United States v. Wilkins*, 253 F. App'x 538, 542 (6th Cir. 2007) ("Playing the [911 call] permitted [the officer] to verify that this particular call had been made and was in fact received . . . at the date and time in question.  The playing of the [911 call] also provided background information as to why [the officer] was dispatched to the

scene. The [911 call] contained relevant and probative evidence."); *see also Guthrie*, 557 F.3d at 250; *United States v. Lloyd*, 462 F.3d 510, 516 (6th Cir. 2006). Here, the 911 calls give context to the robberies, including the timing of the robbery, the description of the robbers, the state of mind of the victim employees, and the priority 1 police classification for robbery with a firearm. They explain why Cleveland police arrived at the Dollar Tree on the dates in question. Moreover, they allow the United States to present to the jury a more complete, auditory description of events as they unfolded as opposed to relatively vague testimony, which enables the jury's deliberative process. The United States therefore respectfully requests that the Court permit it to introduce the 911 calls into evidence.

B.     SUMMARY EVIDENCE

The United States has obtained voluminous cell phone records pertaining to this case. To present relevant evidence contained within these voluminous records in an effective and efficient manner, ATF Intelligence Research Specialist Matthew Sprockett has prepared summary charts of this material, which the Government anticipates presenting during his trial testimony. These summary charts are themselves admissible evidence under Federal Rule of Evidence 1006 and the United States will seek to admit them as substantive evidence, which the jury could reference during deliberations. Federal Rule of Evidence 1006 permits the use of summary charts by providing that "contents of voluminous writings, recordings, or photographs which cannot conveniently be examined in court may be presented in the form of a chart, summary, or calculation." The Sixth Circuit has approved the use of summary materials. *See United States v. Bray*, 139 F.3d 1104, 1112 (6th Cir. 1998).

The summary charts will accurately depict the evidence to be presented to the jury and will streamline the trial considerably by condensing the records. For each summary chart that

the United States anticipates using at trial, the United States has complied with Rule 1006 by providing the underlying documents to Defendants and/or making the underlying documents available for examination and copying in advance of the Court's discovery deadline. Additionally, the United States will produce all such summaries to Defendants in advance of trial. The United States would propose including the Sixth Circuit Pattern Jury Instruction Section 7.12.

C.     ADMISSIBILITY OF JAIL CALLS

The United States intends to offer into evidence Defendant William Holmes' statements made in recorded jail conversations between Defendant and various family members and friends. Specifically, the United States intends to offer the Defendant's statements in which: (1) he instructs his mother to retrieve a pair of Air Jordans and give them to Carter's brother; (2) he instructs Carter's brother to burn the shoes; (3) he instructs Carter's sister to reset his phone; (4) he instructs Carter's sister to tell Carter to stay out of the way; and (5) he instructs Carter to be low key until he knows everything that is going on with the ATF investigation into the robberies. The United States will edit the calls to the extent possible to eliminate reference to the Defendant's current incarceration. However, it may become necessary for the United States to play portions of these conversations that may reveal the Defendant's current incarceration.

Under Federal Rule of Evidence 403, relevant evidence only may be excluded if the danger of unfair prejudice substantially outweighs its probative value. Fed. R. Evid. 403; *United States v. Wesley*, 417 F.3d 612, 622 (6th Cir. 2005). The United States recognizes that "reference to defendant's [] incarceration presents a classic danger of unfair prejudice—that the jury may decide guilt based on the fact that the defendant has a prior conviction." *Wesley*, 417 F.3d at 622. This concern, however, is minimized in cases where no other less prejudicial

evidence is available. *See United States v. Al-Din*, 631 F. App'x 313, 323 (6th Cir. 2015) (upholding admissibility of letter revealing fact of defendant's current incarceration where evidence did not present close question of sufficiency); *see also United States v. Delacruz-Slavik*, No. 10CR17, 2010 WL 4038758, at *7-8 (E.D. Mich. Oct. 1, 2010). The risk of unfair prejudice is further mitigated where the court gives a limiting instruction regarding the proper use of evidence. *See, e.g., United States v. Barnes*, No. 15-5237, 2016 WL 2848638 at *8 (6th Cir. May 16, 2016) (finding that district court's limiting instruction sufficiently mitigated risk that jurors would consider jail call evidence for improper purposes).

The Defendant's statements regarding the firearm should not be excluded under Federal Rule of Evidence 403. The Defendant's statements are probative of guilt insofar as they suggest that Holmes discussed the robberies with Carter corroborating the conspiracy and possessed shoes similar to those worn during the robberies and undertook steps to dispose of them. The United States' purpose for offering these statements is not open to proof by other, less prejudicial evidence but rather depends on the Defendant's articulated understanding of the facts. To mitigate the risk of any unfair prejudice arising from the admission of the recorded conversations, the United States proposes that the Court give the jury a limiting instruction regarding the proper consideration of this evidence. Under these circumstances, the United States respectfully submits that the Defendant's recorded statements are properly admissible.

D.     <u>DEFENDANT'S SELF-SERVING EXCULPATORY STATEMENTS</u>

It is well-settled that defendants cannot seek to introduce their own self-serving exculpatory statements. *United States v. McDaniel*, 398 F.3d 540, 545 (6th Cir. 2005) (citing *United States v. Wilkerson*, 84 F.3d 692, 696 (4th Cir. 1996), *cert. denied*, 522 U.S. 934 (1997)). Indeed, while the Federal Rules of Evidence allow the government to introduce inculpatory

statements made by a defendant, the "Rules do not, however, provide an exception for self-serving, exculpatory statements made by a party which are being sought for admission by that same party." *Id.* Thus, while the government is permitted to introduce some or all of a defendant's statements against him as non-hearsay admissions of a party-opponent under Rule 801(d)(2), a defendant is not permitted to introduce his own statements under the same Rule.

This rule applies equally to the evidence the defendant seeks to introduce in his own case as it does to the evidence he tries to elicit through the cross-examination of witnesses. Because the government may be introducing portions of the defendant's statements, primarily in the form of audio recordings, it anticipates that the defendant may seek to have some additional portions of the statements entered into evidence pursuant to Rule 106. The "rule of completeness," however, does not override the prohibition from admitting self-serving, exculpatory statements. *Gallagher*, 57 Fed. Appx. at 628-29. The "completeness doctrine embodied in Rule 106 should not be used to make something admissible that would otherwise be excluded." *Id.*, *quoting Trepel v. Roadway Express, Inc.*, 194 F.3d 708, 718 (6th Cir. 1999); *see also United States v. Costner*, 684 F.2d 370, 373 (6th Cir. 1982). If the government were seeking to mislead the jury regarding the actual meaning of one of the defendant's admissions, the completeness doctrine might be implicated. That, however, is not the case here.

## IV.  __TRIAL DOCUMENTS__

### A.  <u>STIPULATIONS</u>

The United States and Defendants have entered into the following factual stipulation:

It is hereby stipulated and agreed by and between the United States of America, and counsel for Defendant William Holmes, with the express consent of Defendant Holmes, and counsel for Defendant Demon Carter, with the express consent of Defendant Carter, that, at all times relevant to the Indictment in this case, the Dollar Tree stores located at 12900 Miles Road, Cleveland, Ohio, and 2892 E. 116th

Street, Cleveland, Ohio, engaged in the retail purchase and sale of articles and commodities that had travelled or would travel in interstate commerce.

Additionally, the United States and Defendants have entered into the following evidentiary stipulations:

It is hereby stipulated and agreed by and between the United States of America, and counsel for Defendant William Holmes, with the express consent of Defendant Holmes, and counsel for Defendant Demon Carter, with the express consent of Defendant Carter, that:

1.     The cellular telephone and/or landline records received from Sprint, T-Mobile, and AT&T are authentic as representatives from each carrier would have testified under oath.  Further, the parties stipulate that if called to testify herein, the cell carrier or landline representative would identify Government Exhibits [numbers to be supplemented] in their entirety as being the true and accurate cellular and/or landline telephone records for the dates at issue.  Further, the parties stipulate that Government Exhibits [numbers to be supplemented], which are associated with telephone numbers (216) 309-9248, (216) 924-7517, (216) 441-8585, (216) 256-8362, (216) 246-6828, and (216) 501-8644, respectively, are cellular telephone and/or landline records and may be admitted into evidence without further foundation.

2.     The Dollar Tree surveillance video recordings from May 14, 2016, June 4, 2016, June 15, 2016, and June 19, 2016, are authentic as representatives from Dollar Tree Stores, Inc. ("Dollar Tree") would have testified under oath.  Further, the parties stipulate that if called to testify herein, the Dollar Tree representative would identify Government Exhibits 112, 113, 204, 205, 308, 309, 310, 401, 402, and 403 as being the true and accurate surveillance video recordings from the Dollar Tree stores in question on the dates at issue.  Further, the parties stipulate that Government Exhibits 112, 113, 204, 205, 308, 309, 310, 401, 402, and 403 are Dollar Tree surveillance video recordings and may be admitted into evidence without further foundation.

3.     The audio recordings of Defendant William Holmes's jail telephone calls from Lorain Correctional Institution ("LCI"), Mansfield Correctional Institution ("MCI"), and/or Northeast Ohio Correctional Center ("CCA") are authentic as representatives from LCI, MCI, and/or CCA would have testified under oath.  Further, the parties stipulate that if called to testify herein, the institution representative would identify Government Exhibits [numbers to be supplemented] as being the true and accurate audio recordings of Defendant William Holmes's jail telephone calls from the institution in question on the dates at issue.  Further, the parties stipulate the Government Exhibits [numbers to be supplemented] are audio recordings of Defendant William Holmes's jail telephone calls and may be admitted into evidence without further foundation.

4.    The 911 audio recordings from May 14, 2016, and June 4, 2016, are authentic as representatives from the Cleveland Division of Police, Bureau of Communications ("CPD"), would have testified under oath.  Further, the parties stipulate that if called to testify herein, the CPD representative would identify Government Exhibits 101, 201, and 202 as being the true and accurate 911 audio recordings on the dates at issue.  Further, the parties stipulate the Government Exhibits 101, 201, and 202 are CPD 911 audio recordings and may be admitted into evidence without further foundation.

5.    The records associated with Facebook, Inc. ("Facebook") user identifications "100013170878139" and "dareal.savage.3" are authentic as representatives from Facebook would have testified under oath.   Further, the parties stipulate that if called to testify herein, the Facebook representative would identify Government Exhibits [numbers to be supplemented] as being true and accurate Facebook records for "100013170878139" and "dareal.savage.3." Further, the parties stipulate that Government Exhibits [numbers to be supplemented] are Facebook records for "100013170878139" and "dareal.savage.3" and may be admitted into evidence without further foundation.

6.    Defendant Demon Carter's Dollar Tree Store, Inc. ("Dollar Tree") employment records are authentic as representatives from Dollar Tree would have testified under oath.  Further, the parties stipulate that if called to testify herein, the Dollar Tree representative would identify Government Exhibit [number to be supplemented] as being true and accurate Dollar Tree employment records for Defendant Demon Carter.  Further, the parties stipulate that Government Exhibit [number to be supplemented] are the Dollar Tree employment records for Defendant Demon Carter and may be admitted into evidence without further foundation.

All parties reserve the right to challenge the admissibility of any and all exhibits stipulated to herein on the basis of relevancy.

B.    PROPOSED JURY INSTRUCTIONS

The United States respectfully requests that the Court submit to the jury its proposed instructions, which were filed contemporaneously with this brief.

C.    PROPOSED *VOIR DIRE* QUESTIONS

The United States respectfully requests that the Court direct the proposed questions to the jury, which were filed contemporaneously with this brief.

D.    EXPERT NOTICE

The United States has provided notice to Defendants and counsel that it may call ATF Intelligence Research Specialist Matthew Sprockett as an expert witness.  IRS Sprockett will testify as an expert witness regarding cellular telephones generally, historical cell phone and call data records, and his experience and use of such records to ascertain the approximate location of a given phone at a given time.  Written notice of the United States' intent to present testimony from this witness, along with a description of his testimony, copies of any reports he prepared, and resume has been previously provided to the Defendants pursuant to Rule 16 of the Federal Rules of Criminal Procedure.

E.    EXHIBIT AND WITNESS LISTS

The United States will submit its anticipated Witness List to the Court via email.  The United States will also exchange its proposed Exhibit List with counsel.  The United States will mark all proposed exhibits before trial in accordance with the Court's Order.

## V.    COURTROOM PROCEDURE

A.    JENCKS MATERIAL

The United States will provide *Jencks* material to consistent with its obligation to the Court, Defendants and counsel.  Given the violent nature of these robberies and communications with several victim employees in this case, however, the United States has significant concern for witness safety and independence.  As such, the United States intends to turn over *Jencks* material on Friday, April 27, 2018.

B.    SEQUESTRATION OF WITNESSES & PRESENCE OF GOVERNMENT AGENT AT TRIAL

The United States respectfully requests that the Court issue a witness-sequestration order pursuant to Federal Rule of Evidence 615.  The government designates ATF Special Agent

Kimani Howell as its representative in this case to be present at counsel table throughout the trial. Agent Howell's presence in the courtroom during trial is essential to the presentation of the government's case. *See* FED. R. EVID. 615(b) (specifically excluding from a sequestration order "an officer or employee of a party that is not a natural person, after being designated as the party's representative by its attorney"); FED. R. EVID. 615(c) (providing an additional exception for essential witnesses).

## VI.  ESTIMATED LENGTH OF TRIAL

The United States anticipates completing its case-in-chief in approximately five to six days.

## VII.  CONCLUSION

The United States is prepared to submit additional briefing on any issue should the Court or circumstances require.

Respectfully submitted,

JUSTIN E. HERDMAN
United States Attorney

By:  /s/ Megan R. Miller
Megan R. Miller (OH: 0085522)
Carol M. Skutnik (OH: 0057940)
Assistant United States Attorneys
United States Court House
801 West Superior Avenue, Suite 400
Cleveland, OH 44113
(216) 622-3855/3785
(216) 522-8355 (facsimile)
Megan.R.Miller@usdoj.gov
Carol.Skutnik@usdoj.gov

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 26th day of April 2018 a copy of the foregoing document was filed electronically.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  All other parties will be served by regular U.S. Mail.  Parties may access this filing through the Court's system.

/s/ Megan R. Miller
Megan R. Miller
Assistant U.S. Attorney