IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:17CR243 |
| | ) | |
| Plaintiff, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| WILLIAM HOLMES, | ) | <u>UNITED STATES' SENTENCING</u> |
| | ) | <u>MEMORANDUM</u> |
| Defendant. | ) | |

Now comes the United States of America, by its counsel, Justin E. Herdman, United States Attorney, and Megan R. Miller and Carol M. Skutnik, Assistant United States Attorneys, and respectfully submits this memorandum setting forth the United States' position regarding the sentencing for Defendant William Holmes.  For the reasons set forth below and those to be articulated at the sentencing hearing, the United States respectfully submits that a significant sentence that is sufficient but not greater than necessary to comply with the purposes of 18 U.S.C. § 3553(a) is appropriate in this case.

I.      **APPLICABLE LEGAL STANDARDS**

A well-established legal framework guides the Court's sentencing determination.  The advisory Guidelines range serves as "the starting point and the initial benchmark."  *Gall v. United States*, 552 U.S. 38, 49 (2007); *see also United States v. Collington*, 461 F.3d 805, 807

(6th Cir. 2006). The Guidelines thus remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses. The Sentencing "Commission fills an important institutional role: It has the capacity courts lack to 'base its determination on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (internal citation omitted). After determining the appropriate Guidelines range, the Court then turns to the familiar factors set forth in 18 U.S.C. § 3553(a).

## II. SENTENCING GUIDELINES COMPUTATION

The United States concurs with the Guidelines calculation outlined in the PSR. (R: 88: PSR, PageID 2149-51). Holmes' base offense level for each robbery offense (Counts 2, 3 and 5) is 20 under U.S.S.G. § 2B3.1(a). (*Id.*, PageID 2149-50). A two-level enhancement under U.S.S.G. § 2B3.1(b)(4)(B) also applies to each robbery because Holmes and/or his co-conspirators restrained the victim employees at gunpoint and moved them throughout the store. (*Id.*). A six-level enhancement applies to Count 2 under U.S.S.G. § 2B3.1(b)(2)(b) because Holmes' co-conspirator possessed a firearm during the robbery.[1] (*Id.*). After a two-level multiple count adjustment, Holmes' total offense level is 30. (*Id.*, PageID 2151). Holmes falls into Criminal History Category VI. (*Id.*, PageID 2156). The corresponding Guidelines imprisonment range for Counts 2, 3 and 5 is 168 months to 210 months. (*Id.*, PageID 2160).

As to Count 4, the Guidelines range is a mandatory 84 months, imposed consecutively to all other counts. (*Id.*). As to Count 6, the Guidelines range is a mandatory 300 months, imposed

---

[1] Although Counts 3 and 5 also involve the use of firearms, the six-level enhancement does not apply because the same offense conduct forms the basis of the 18 U.S.C. § 924(c) charges in Counts 4 and 6, respectively.

consecutively to all other counts. (*Id.*). Holmes' cumulative Guidelines range is 552 months to 594 months. (*Id.*).

  A. <u>Use of a Firearm Enhancement</u>

Holmes objects to the six-level enhancement under U.S.S.G. § 2B3.1(b)(2)(B) for use of a firearm in connection with Count 2, arguing that his co-conspirator only "brandished" the firearm. The PSR properly included this enhancement, however, based on the conduct of Holmes' co-conspirator. (R. 88: PSR, PageID 2149). The Sentencing Guidelines define "brandishing" as occurring when "all or part of the weapon was displayed, or the presence of the weapon was otherwise made known to another person, in order to intimidate that person, regardless of whether the weapon was directly visible to that person." U.S.S.G. § 1B1.1 App. 1(C). By contrast, the Guidelines define "otherwise used" to mean that "the conduct did not amount to the discharge of a firearm but was more than brandishing, displaying, or possessing a firearm." *Id.*, § 1B1.1 App. 1(I).

The Sixth Circuit has held that a defendant "otherwise used" a firearm, for purposes of the six-level sentencing enhancement, by pointing a gun at persons in the course of the robbery and ordering them to comply with instructions. *See United States v. Bolden*, 479 F.3d 455 (6th Cir. 2007). In *Bolden*, the defendant argued that the five-level brandishing enhancement more properly applied because "pointing a firearm at an individual is simply brandishing a firearm because it is one form of displaying a firearm." *Id.* at 461. The Sixth Circuit rejected this argument, reasoning:

> by pointing a firearm at an individual and making a demand of that individual, a defendant communicates the implicit threat that if the individual does not comply with the defendant's demands, the defendant will shoot the individual. In contrast, displaying a firearm with intent to intimidate implies a future act of the defendant— that the defendant has the capability to use the firearm in the future, but is not presently threatening to do so.

3

*Id.* The Sixth Circuit further noted that holdings in other circuits support this distinction. *Id.* (collecting cases). Thus, the Court held that "pointing a gun while telling someone what to do obviously goes beyond what . . . constitutes brandishing." *Id.* at 463.

The instant conduct is markedly similar to the facts in *Bolden*. Here, Ms. Scriven testified that the robber pointed a gun at her when he entered the store. (R. 74: Trial Trans., PageID 550). She further testified that the robber grabbed her by the shirt and forced her to the office at gunpoint. (*Id.*). While doing this, the robber repeatedly threatened Ms. Scriven: "Hurry up. Hurry up. Bitch, hurry up." (*Id.*, PageID 553). The surveillance video also confirms Ms. Scriven's account. AS By pointing a gun at Ms. Scriven and repeatedly threatening her, the conduct of Holmes' co-conspirator goes beyond brandishing and constitutes "otherwise using" a firearm. Under these circumstances, the Court may conclude by a preponderance of the evidence that Holmes' co-conspirator "otherwise used" a firearm for purposes of the enhancement.

B. <u>Physical Restraint Enhancement</u>

Holmes also objects to the two-level enhancement under U.S.S.G. § 2B3.1(b)(4)(B) for physical restraint of a victim for Counts 2, 3 and 5, arguing that there was no physical restraint "in excess of the level of restraint inherent in any armed robbery." Holmes's argument is misplaced. The two-level enhancement applies under Section 2B.3.1(b)(4)(B) "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(B). The application note to Section 2B3.1 states that it provides "an enhancement for robberies where a victim was forced to accompany the defendant to another location, or was physically restrained by being tied, bound, or locked up." U.S.S.G. § 2B3.1, App. note background. Although Holmes maintains that the physical restraint enhancement does

4

not apply absent physical contact with the victim, the Sixth Circuit has squarely rejected this argument. *See United States v. Coleman*, 664 F.3d 1047 (6th Cir. 2012).

In *Coleman*, the Sixth Circuit upheld the district court's application of the enhancement where the defendant forced the victim bank employee from the bank lobby to his office at gunpoint. *Id.* at 1049. It also surveyed case law from other circuits and concluded that "most circuit courts uphold the enhancement in similar robbery cases where a defendant limits a victim's freedom of movement by brandishing a firearm and compelling the victim to move from one location to another." *Id.* at 1050 (citations omitted).

Here, the Dollar Tree surveillance video played at trial clearly captured the victim store employees in each robbery being forced, at gunpoint, to other areas of the store. In the May 14, 2016, robbery, Almetrice Scriven was forced from the front of the store to the manager's office to empty the safe. (R. 74: Tr. Trans., PageID 550-52). She was then ordered to lay on the floor until the robber left. (*Id.*, PageID 552). In the June 4, 2016, robbery, Jada Perkins and Eboni Ervin were similarly forced at gunpoint from the front of the store to the manager's office. And in the June 19, 2016, robbery, David Randall was forced from the back of the store at gunpoint to open up a cash register. Based on this uncontroverted video evidence, the Court may find by a preponderance of the evidence that the two-level enhancement for physical restraint applies to Counts 2, 3 and 5.

**III. APPLICATION OF § 3553(A) FACTORS**

  A. <u>Nature and Circumstances of the Offense</u>

This Court is well aware of the nature and circumstances of the offense, which counsel in favor of a significant sentence. Holmes was a willing and active participant in three armed robberies of Cleveland-area Dollar Tree stores during the summer of 2016. Holmes personally

used a firearm in two of the robberies; his accomplice did so in the third. In each robbery, Holmes and/or his accomplices entered the store covering their faces in hoodies. In the May 14, 2016, robbery, Holmes' accomplice grabbed Ms. Scriven by the shirt and forced her at gunpoint to the safe. In the June 4, 2016, robbery, Holmes hit store employee Jada Perkins on the back of the head with a pistol. And in the June 19, 2016, robbery, one of Holmes' accomplices forced David Randall at gunpoint from the back of the store to the front, shoving him in the back on multiple occasions. Another accomplice held a customer on the ground at gunpoint and rifled through his wallet. These aggressive, violent robberies—which became increasingly brazen over time—posed a grave danger to store customers and victim employees. The victims testified at trial that they were in fear for their life. Indeed, the robbery forced one victim employee to relocate and find new employment, and the experience continues to haunt him/her to this day. (R. 88: PSR, PageID 2149). Given the violence

  B. History and Characteristics of the Defendant

The history and characteristics of the defendant likewise counsel in favor of a significant sentence. Holmes is no stranger to the criminal justice system and naturaly earns a Criminal History Category VI. (*See* R. 88: PSR, PageID 2152-56). Beginning at age 14, Holmes sustained five juvenile convictions, including one for aggravated robbery with a firearm. (*Id.*, PageID 2152-54). As an adult, Holmes accrued four additional convictions, including a second conviction for aggravated robbery with a firearm and a conviction for attempted murder with a firearm. (*Id.*, PageID 2154-56). These combined convictions, most of which involve guns and violence, demonstrate Holmes' history of violent behavior and his pattern of similar criminal conduct. He also has demonstrated a history of noncompliance with law enforcement. (*See id.*, PageID 2154-55 (resisting arrest and uncooperative behavior)). Holmes' extensive criminal

history thus demonstrates his ongoing disrespect for the law and suggests that previous judicial sanctions have had little, if any, deterrent effect on him. A significant sentence thus is needed to provide just punishment, deter the defendant, and protect the community.

## IV. CONCLUSION

For these reasons and those to be articulated at the sentencing hearing, the United States respectfully requests that the Court impose a sentence that is sufficient but not greater than necessary to accomplish the goals of § 3553(a).

                                            Respectfully submitted,

                                            JUSTIN E. HERDMAN
                                            United States Attorney

By:   /s/ Megan R. Miller
       Megan R. Miller (OH: 0085522)
       Assistant United States Attorney
       United States Court House
       801 West Superior Avenue, Suite 400
       Cleveland, OH 44113
       (216) 622-3855
       (216) 522-8355 (facsimile)
       Megan.R.Miller@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on this 14th day of August 2018 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

/s/ Megan R. Miller
Megan R. Miller
Assistant U.S. Attorney